## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**RALPH RIOS,**

        **Plaintiff,**

**vs.**                                      **No. CIV 06-1231 RB/WPL**

**CITY OF LAS CRUCES, and**
**JIM ERICSON, Individually**
**and in his official capacity as City**
**Manager of Las Cruces, and**
**BILL BAKER, Individually and in**
**his official capacity as Chief of Police**
**of Las Cruces,**

        **Defendants.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Bill Baker's Motion for Summary Judgment (Doc. 7), filed on February 8, 2007. Jurisdiction arises under 28 U.S.C. §§ 1331 and 1367(a). The Court, having considered the motion, briefs, relevant law, and being otherwise fully advised, finds that the claims against Defendant Baker in his official capacity should be dismissed without prejudice and the motion otherwise should be denied.

**I.**     **Facts.**

The following statement of facts is set forth in the light most favorable to Plaintiff, with all reasonable inferences from the record drawn in his favor. *See Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006).

Mr. Rios served as a police officer for the City of Las Cruces ("City") from October 1981 until December 13, 2003. (Compl. ¶ 5; Notice of Removal, Attachment 24, Moquin Aff. I, Ex. F.) During his career with the Las Cruces Police Department ("LCPD"), Mr. Rios advanced through the

ranks and received numerous commendations.  (Compl. ¶ 5.)  When his employment with LCPD ended, Mr. Rios was the detective in charge of professional standards, also known as internal affairs. (Compl. ¶ 6.)

On November 24, 2003, Mr. Rios joined other off-duty LCPD officers and friends for Monday Night Football at a bar located in the former Las Cruces Hilton.  (Def. Ex. A, Rios Dep. 29.)  Mr. Rios arrived around 8:30 or 9:00 p.m., and left about 11:45 p.m.  (Rios Dep. 30-31.) Officer J. R. Stewart was present and testified in his deposition that Mr. Rios appeared "all right" when he left the bar.  (Pl. Ex. 2A, Stewart Dep. 16.)  Officer Stewart stated that Mr. Rios had "maybe at the most five or six beers" and if Mr. Rios had been "messed up" or not "okay," a designated driver would have driven him home.  (Stewart Dep., Ex. 11, p. 3.)  Monty Linquist, who attended the gathering, testified in his deposition that Mr. Rios did not appear to be intoxicated.  (Pl. Ex. 2A, Linquist Dep., 21.)

At 11:48 p.m., LCPD Officer Rick Garcia was on bicycle patrol duty near the hotel parking lot when he heard a "crunching" sound, noticed an SUV backing out of a parking space, and observed movement of a parked vehicle adjacent to where the SUV backed up.  (Def. Ex. C.) Officer Garcia surmised that the SUV had hit the parked vehicle.  (*Id*.)  As the SUV left the parking lot, without notification of the accident, Officer Garcia got on his bike and tried to stop the SUV. (*Id*.)  The SUV left the parking lot and proceeded east on Foothills Drive.  (*Id*.)  As Officer Garcia pedaled after the SUV, he was able to read the license plate.  (*Id*.)  Officer Garcia radioed central dispatch with the description of the SUV, including the license plate number, and reported that the SUV was involved in a possible hit and run.  (*Id*.)

LCPD Officer Christine Schnell was in her patrol car near the intersection of Foothills and Lohman when she heard Officer Garcia's radio transmission.  (Def. Ex. D.)  Officer Schnell

2

observed a vehicle matching the description, pulled it over, and asked Officer Garcia for confirmation of the plate number and the location of any damage. (*Id*.) Officer Garcia confirmed the plate number and stated any damage would be located on the right rear bumper. (*Id*.) Officer Schnell observed a mark on the right rear bumper consistent with Officer Garcia's statement. (*Id*.) Mr. Rios testified in his deposition that there was no damage to his SUV. (Rios Dep. 47; 85-86.)

As she approached the vehicle, Officer Schnell smelled alcoholic beverages and recognized Mr. Rios as the driver. (Def. Ex. D.) Other officers arrived on the scene and Officer Schnell called her supervisor. (*Id*.) Officer Schnell was instructed to treat the driver in the same manner as any other person under the circumstances. (*Id*.) Officer Schnell administered field sobriety tests and concluded that Mr. Rios was intoxicated in excess of the legal limit for driving. (*Id*.) Mr. Rios was arrested and transported to the police station, where he refused additional alcohol tests. (Def. Exs. D and F.) Mr. Rios was cited for aggravated DWI and leaving the scene of an accident without notification and released on his own recognizance . (Def. Ex. F.) Defendant Baker drove Mr. Rios home. (Rios Dep. 57.) Mr. Rios testified in his deposition that he was not impaired and that he did not strike a vehicle. (Rios Dep. 38; 42.)

On Tuesday, November 25, 2003 or Wednesday, November 26, 2003, Defendant Baker visited Mr. Rios at home. (Rios Dep. 59.) Defendant Baker informed Mr. Rios that Mr. Rios was on administrative leave with pay. (*Id*.)

After an executive staff meeting on Monday, December 1, 2003, Defendant Baker informed Deputy Chief Richard Parra that Mr. Ericson had decided that Mr. Rios would be given one week to decide whether to resign or be placed on administrative leave without pay pending an investigation. (Parra Dep. 15; 21.)

3

During the week after Thanksgiving,[1] Defendant Baker, Deputy Chief Parra and Officer Stewart came to Mr. Rios' home.  (Rios Dep. 62-64, 70-71; Pl. Ex. 2A, Stewart Dep. 18, 30; Pl. Ex. 2A, Parra Dep. 15; 19.) Defendant Baker informed Mr. Rios that Defendant Ericson had decided to give Mr. Rios the option of taking early retirement or being placed on leave without pay pending trial and/or an internal investigation.  (Rios Dep. 64, 92; Parra Dep. 16-17, 23, 32; Pl. Ex. 2, Baker Dep. 23-24.)  Defendant Baker told Mr. Rios that Mr. Rios needed to decide what to do by Friday, December 5, 2003.[2]  (Parra Dep. 31.)

At the same meeting, Defendant Baker told Mr. Rios that Defendant Ericson was "looking toward termination," (Rios Dep. 64), the decision to place Rios on leave without pay was "cast in stone," and Rios might lose his retirement benefits[3] if the City terminated him.  (Baker Dep. 22, 38; Parra Dep 29.)  Defendant Baker stated that Mr. Rios could expect no leniency from Defendant Ericson.  (Baker Dep. 45.)

Mr. Rios testified in his deposition that "Chief Baker said, 'You know what? As of this time, you're on admin[istrative] leave without pay pending a court trial because Mr. Ericson said so.' "

---

[1] Mr. Rios testified in his deposition that the second meeting occurred one or two days after the first meeting. (Rios Dep. 71.) Deputy Chief Parra testified that the second meeting occurred on December 1, 2003. (Parra Dep. 19.)  In his brief, Mr. Rios states that the meeting occurred during the week after Thanksgiving, which was the week of December 1, 2003, and cites to the Parra and Baker Depositions.  (Pl's Mem. Br. at 5.)

[2] Mr. Rios testified in his deposition that Defendant Baker informed Mr. Rios that Mr. Rios was on leave without pay as of the second meeting.  (Rios Dep. 91-92.)  However, Mr. Rios also testified in his deposition that Defendant Ericson "wanted to give [Mr. Rios] leave without pay," thereby implying that Baker did not inform Rios that he was on leave without pay as of the second meeting.  (Rios Dep. 64.)  At page 11 of his brief, Mr. Rios acknowledges that Defendant Baker informed him that he would be placed on leave without pay as of Friday, December 5, 2003.  (Pl.'s Br. at 11.)  At page 17 of his brief, Plaintiff states that it was improper to place him on leave without pay one week after he was placed on leave with pay.  (Pl.'s Br. at 17.)  Mr. Rios' personnel file indicates that he was never demoted, suspended, or terminated.  (Moquin Aff. I ¶ 11; Def Ex. H, Moquin Aff. II ¶ 6.)

[3] According to Andre Moquin, City's current Human Resources Director, PERA does not have a provision for loss of pension benefits at the time of separation.  (Pl. Ex. 2, Moquin Dep. 16.)

4

(Rios Dep. 92.)  Mr. Rios testified in his deposition that Mr. Rios asked Defendant Baker what that meant.  (*Id*.) Defendant Baker responded:  " '[y]ou'd lose all your insurance, all your retirement and everything depending on the outcome of the trial which the city attorneys are going to file, and you will more than likely lose everything by termination, and/or you can retire.' "  (*Id*.)

Deputy Chief Parra testified in his deposition that a City employee on leave without pay must pay the full cost of health insurance benefits and does not accrue time toward retirement. (Parra Dep. 16.)  Mr. Rios could have filed a grievance with respect to the decision to place him on leave without pay.  (Parra Dep.33. )  The grievance would have been heard by Defendant Baker, then by Ericson, and then by the City's personnel board.  (Parra Dep. 34.)  The resolution of the criminal case might have taken as much as a year.  (Rios Dep. 66.)

Mr. Rios "opted to retire" because he could not afford to lose health insurance for his family.  (Rios Dep. 69; 70; 77.)  Mr. Rios testified in his deposition: "[t]hey left me no option; so my only option was to retire . . . . There was no way I could . . . have gone with administrative leave . . . without pay and lose my retirement and lose my sick leave, lose all my insurance. . . . "  (Rios Dep. 80.)

Defendant Baker stated that Baker would request that Mr. Rios be permitted to finish the pay period on December 13, 2003.  (Rios Dep. 69-70.)  Defendant Baker directed Mr. Rios to obtain a doctor's excuse to the end of the pay period.  (Rios at 69.)

Mr. Rios requested information on how to apply for early retirement benefits from Kathe Stark, City's Human Resources Manager.   (Rios Dep. 69, 79 and 80.)  Ms. Stark delivered retirement paperwork to Mr. Rios' home on December 3, 2003, which was the Wednesday after Thanksgiving.  (Stark Dep. 20.)  Mr. Rios personally delivered the paperwork to PERA in Santa Fe to expedite his receipt of early retirement benefits.  (Rios Dep. 69.)  Mr. Rios was only a month or

5

two short of the required time to receive a full retirement benefit.  (Baker Dep. 15; Parra Dep. 16; Stark Dep. 39-40.)

During the week of December 1, 2003, Rios drafted a retirement letter stating his intent to retire effective December 13, 2003, and submitted a note from his physician stating that Mr. Rios was unable to work through December 15, 2003 due to medical reasons.  (Rios Dep. 71 and Ex. 9.)  On December 5, 2003, Mr. Rios submitted his retirement letter.  (Rios Dep. Ex. 8.)

Section 904 of the City's Personnel Manual provides an employee may be suspended for failure to observe policies or work rules, or other employee actions that adversely affect job performance.  (Moquin Aff. I, Ex. 9, Personnel Manual § 908.)  This section requires a "Loudermill" due process hearing[4] for any suspension of more than three working days.  (Personnel Manual § 904(3)).  Section 907, entitled "Loudermill Procedures," sets out detailed procedures for such hearings.  (Personnel Manual § 907.)  Following notification of intent to terminate or suspend, the employee must be placed on administrative leave with pay pending the outcome of the due process hearing.  (Personnel Manual § 907(3).)  The Section 907 procedures were not followed with respect to the decision to place Mr. Rios on leave without pay.  (Baker Dep. 39.)

Section 908 of the Personnel Manual provides that employees charged with criminal activities may be placed on administrative leave with pay or leave without pay pending a final determination, or may be assigned other duties pending a final outcome of the matter.  (Personnel Manual § 908.)  Section 908 does not reference the "Loudermill Procedures" of Section 907.  (Personnel Manual § 908.)  Section 908 states "[e]ach situation under investigation will be administered on a case-by-case basis.  The [City] Legal Office shall review each case and advise the

---

[4] *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985).

City Manager." (*Id.*)

Notwithstanding Section 908, City policy required notice and hearing before placement of an employee on leave without pay for disciplinary reasons. (Stark Dep. 29-31.) A decision to place an employee on leave without pay required the approval of the City Manager and the Human Resources Director. (Stark Dep. 32.)

City conducted no internal investigation before Defendant Baker informed Mr. Rios of the decision to place him on leave without pay. (Parra Dep. 43-44.) Prior to the meeting that occurred during the week after Thanksgiving, Mr. Rios did not receive notice of the decision to place him on leave without pay. (Parra Dep. 41; 44.) Mr. Rios did not request a pre-disciplinary hearing because he was not aware he was entitled to one in that he was not a union member. (Rios Dep. 26.) Although he was in charge of professional standards, Mr. Rios testified in his deposition that he had no experience involving an internal investigation concerning a professional standards officer. *Id*. Mr. Rios was never offered a formal pre-disciplinary hearing. (Rios Dep. 66.) Mr. Rios "opted to retire" because he felt it was "the only thing [he] could do." (Rios Dep. 69.)

On August 18, 2005, Mr. Rios filed suit in the Third Judicial District Court, State of New Mexico, alleging breach of contract and wrongful discharge against City, and §1983 due process claims against City, Mayor William M. Mattiace and City Manager Jim Ericson. On October 21, 2005, Defendants moved for summary judgment. On May 18, 2006, New Mexico Third Judicial District Judge Jerald A. Valentine granted the motion as to Mayor Mattiace, but otherwise denied the summary judgment due to the "considerable inconsistency" in Defendant Baker's testimony. (Pl. Ex. 1.) Construing the facts in the light most favorable to Mr. Rios, Judge Valentine determined that it could be concluded City failed to follow its own policies and procedures, Mr. Rios was deprived of his substantive and procedural due process rights, and the resignation was not by free

7

choice and was involuntary because Mr. Rios was confronted with a *de facto* suspension without pay

before a Loudermill hearing with no way to meaningfully contest the charges.  (*Id.*)

On August 7, 2006, Mr. Rios filed a motion for partial summary judgment, which the state

court denied.  On October 15, 2006, Mr. Rios filed a motion to amend the complaint.  On November

22, 2006, the state court granted Mr. Rios leave to file a first amended complaint.

On November 22, 2006, Mr. Rios filed a First Amended Complaint, adding claims against

Defendant Baker and deleting the claims against Mayor Mattiace.  In the First Amended Complaint,

Mr. Rios asserts 42 U.S.C. § 1983 due process claims against all defendants, breach of contract and

wrongful termination against City, and misrepresentation against City and Defendant Baker in his

official capacity.  On December 15, 2006, Defendant Baker removed this action from state court,

pursuant to 28 U.S.C. § 1446.  In essence, Mr. Rios claims that Defendant Baker violated his rights

to due process by coercing him into early retirement.

Defendant Baker moves for summary judgment on the §1983 due process claim against him,

arguing that Mr. Rios was not constructively discharged, Mr. Rios received all the process he was

due, the official capacity claims are redundant, there is no evidence of an official custom or policy

for the conduct attributed to Defendant Baker, Defendant Baker is entitled to qualified immunity,

and constructive discharge lies only against the employer.

Mr. Rios responds that the issues are precluded by the law of the case doctrine, the question

of constructive discharge is governed by state law, the early retirement was involuntary, Mr Rios

was denied due process, and Defendant Baker is liable for his actions.

## II.   Standard.

Summary judgment may be granted only when "there is no genuine issue as to any material

fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Fuerschbach*, 439 F.3d at 1207 (quoting Rule 56(c)). The evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Id.*

## III.    Discussion.

### A.    Judge Valentine's decision is not entitled to preclusive effect.

Mr. Rios argues that Judge Valentine's May 18, 2006 decision is entitled to preclusive effect because it is the law of the case. "A legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *Concrete Works of Colo., Inc. v. City & County of Denver*, 321 F.3d 950, 992 (10th Cir. 2003) (alteration and quotation omitted). Law of the case does not apply because there has been no appeal.

This argument may be read as a request to give preclusive effect to Judge Valentine's decision. So construed, the argument raises an interesting question as to whether federal or New Mexico law concerning issue preclusion applies. *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1146 (10th Cir. 2006) (observing that state law applies to state judgments and federal law applies to a judgment of a federal court). However, this point is purely academic because the result is the same under either standard. *See Deflon v. Sawyers*, 139 N.M. 637, 642-43, 137 P.3d 577, 582-83 (2006) (finding little difference between federal and state law related to application of non-mutual affirmative collateral estoppel).

At a minimum, issue preclusion requires: (1) a judgment on the merits in the earlier action;

(2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999); *see also Deflon*, 139 N.M. at 643, 137 P.3d at 583. Clearly, the first two requirements are absent. Defendant Baker was not a party or in privity with a party at the time Judge Valentine issued his decision. No final judgment has issued and I may exercise my discretion to revisit prior rulings at any time. *See* Fed. R. Civ. P. 54(b). Accordingly, Judge Valentine's decision is not entitled to preclusive effect under law of the case or any theory of issue preclusion.

**B.      Summary Judgment is inappropriate on the question of constructive discharge.**

Defendant Baker contends that he is entitled to summary judgment on the §1983 due process claim because Mr. Rios was not constructively discharged.[5] Defendant Baker does not dispute, in this context, that Mr. Rios had a protected property interest in continued employment with City and was entitled to due process in connection with any deprivation of this interest. *See Loudermill*, 470 U.S. at 538-39. Defendant Baker asserts Mr. Rios voluntarily relinquished such interest. Mr. Rios maintains he did not retire voluntarily, but was constructively discharged.

"A resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice." *Parker v. Bd. of Regents of Tulsa Jr. Coll.*, 981 F.2d 1159, 1162 (10th Cir. 1992) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988)). In order to demonstrate constructive discharge, Mr. Rios

---

[5] Mr. Rios relies on state law concerning constructive discharge. As the New Mexico Supreme Court explained in the authority cited by Mr. Rios, "[c]onstructive discharge is not an independent cause of action, such as a tort or a breach of contract. Instead, constructive discharge is a doctrine that permits an employee to recast a resignation as a de facto firing, depending on the circumstances surrounding the employment relationship and the employee's departure." *Gormley v. Coca-Cola Enterprises*, 137 N.M. 192, 194, 109 P.3d 280, 282 (2005). In that Mr. Rios asserts a §1983 due process claim against Defendant Baker, and does not assert an employment termination claim based on state law as to this defendant, federal law concerning constructive discharge in the §1983 due process context applies to this discussion.

must show "an objective basis of believing that further employment was impossible and that his resignation was not the product of his own free will." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000) (citing *Yearous v. Niobrara County Mem. Hosp.*, 209 F.3d 1213, 1356 (10th Cir. 1997)).

In assessing the voluntariness of an employee's resignation or early retirement, the relevant factors are " '(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation.' " *Parker*, 981 F.2d at 1162; *see also Lenz v. Dewey*, 64 F.3d 547, 551-52 (10th Cir. 1995) (citing these factors as relevant).

Constructive discharge may occur, and form the basis of a § 1983 due process claim, when: (1) the employer forces the employee's resignation or retirement by coercion or duress, or (2) the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.10 (3d Cir. 2006) (citing *Leheny v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir.1999)). "An employee is not required to show an intent to deceive on the part of the agency in order for his retirement to be held involuntary. Rather, it is sufficient if the employee shows that a reasonable person would have been misled by the agency's statements." *Scharf v. Dept. of the Air Force*, 710 F.2d 1572, 1575 (Fed. Cir. 1983) (cited with approval in *Parker*, 981 F.2d at 1162). Although these authorities are not binding herein, I find them to be persuasive in light of the evidence of record.

Defendant Baker advised Mr. Rios that Mr. Rios would lose his retirement benefits if Mr. Rios were placed on leave without pay and Mr. Rios would more than likely lose everything by termination. Although this advice may have been erroneous, it was reasonable for Mr. Rios to

11

believe he would lose his retirement benefits if he did not decide to retire by December 5, 2003. Under the circumstances, a reasonable person would have been misled by Defendant Baker's statements. On summary judgment, the evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Fuerschbach*, 439 F.3d at 1207. Accepted in the light most favorable to Mr. Rios, the evidence indicates that Defendant Baker obtained the retirement by misrepresenting material facts to Mr. Rios.

Defendants Baker's tactics could certainly be viewed as coercive. Defendant Baker placed Mr. Rios on leave without pay and warned Mr. Rios that Defendant Ericson wanted to terminate Mr. Rios and it was "cast in stone" he would be fired if he did not opt to retire by December 5, 2003. Defendant Baker and Defendant Ericson had already made up their minds. A reasonable person in Mr. Rios' position would believe that any attempt to contest the decision was fruitless. Mr. Rios believed that his family lost health insurance coverage and he stopped accruing retirement benefits as of that day. Under these circumstances, Mr. Rios was not given a realistic alternative to retirement. Viewed in the light most favorable to Mr. Rios, a fact-finder could conclude that Defendant Baker coerced Mr. Rios into early retirement.

The evidence also satisfies the remaining three *Parker* factors. Mr. Rios did not understand the nature of the choice he was given. Although he was in charge of professional standards, Mr. Rios testified in his deposition that he had no experience involving an internal investigation concerning a professional standards officer. Mr. Rios believed that he was not entitled to a due process hearing. The misunderstanding was compounded by the tight deadline for Mr. Rios' decision. Defendant Baker gave Mr. Rios only two days to choose. This was an unreasonably short period of time.

Mr. Rios was not permitted to select the effective date of his retirement because Defendant

Baker stated that Baker would request that Mr. Rios be permitted to finish the pay period, which ended on December 13, 2003. Defendant Baker decided that Mr. Rios should finish out the pay period and take sick leave until December 13, 2003, the same date that Mr. Rios identified in his retirement letter as the effective date of his retirement. Indeed, Defendant Baker directed Mr. Rios to obtain a doctor's excuse to excuse him from work until that date. This evidence demonstrates that Defendant Baker, and not Mr. Rios, selected the effective date of Mr. Rios' retirement. Viewed in the light most favorable to Mr. Rios, the evidence establishes that Mr. Rios' decision to retire was not voluntary and that he was constructively discharged.

**C.     Summary judgment is inappropriate on the question of whether the meetings between Defendant  Baker and Mr. Rios satisfied due process.**

Defendant Baker contends his meetings with Mr. Rios satisfied the requirements of the Due Process Clause. The Supreme Court has held that the Due Process Clause requires " 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill*, 470 U.S. at 542 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)). The purpose of the pre-termination hearing is to serve as "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545-46. Although a pre-termination hearing need not be elaborate, it must include (1) oral or written notice to the employee of the charges against him, (2) an explanation of the employer's evidence, and (3) an opportunity for the employee to present his side of the story. *Id.* 470 U.S. at 546.

Deputy Chief Parra testified in his deposition that Mr. Ericson decided to terminate Mr. Rios at the executive staff meeting on Monday December 1, 2003. Construed in the light most favorable to Mr. Rios, the evidence establishes that the decision to place Mr. Rios on leave without pay was

complete before the meeting during the week after Thanksgiving. *Loudermill* requires the employer to provide notice of the charges, a summary of the employer's evidence, and an opportunity to respond *before* the termination. *Montgomery v. City of Ardmore*, 365 F.3d 926, 936 (10th Cir. 2004).

Defendant Baker did not give Mr. Rios prior notice of the charges or an opportunity to respond. Defendant Baker told Mr. Rios that it was "cast in stone" that Mr. Rios would be fired if he did not opt to retire by December 5, 2003. Indeed, the evidence demonstrates that the decision had already been reached before the meeting where Defendant Baker informed Mr. Rios that he was placed on leave without pay and given Hobson's choice. In that the question was already decided, the meetings could not have satisfied the purpose of *Loudermill*.

None of the evidence indicates that Defendant Baker gave Mr. Rios a summary of City's reasons for placing him on leave without pay pending termination or gave Mr. Rios an opportunity to respond to City's charges and present his side of the story. Taken in the light most favorable to Mr. Rios, the meetings between Defendant Baker and Mr. Rios did not constitute an adequate pre-termination hearing under *Loudermill*.

**D.     The official capacity claims are dismissed without prejudice.**

A suit against a governmental official, in his official capacity, is treated as a suit against the governmental entity itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Because Mr. Rios does not object to a dismissal without prejudice of the claims against Defendant Baker in his official capacity, these claims will be dismissed without prejudice. This dismissal does not affect Mr. Rios' claims against City based on actions of Defendant Baker in his official capacity, the municipal liability claims against City, or the claims against Defendant Baker in his individual capacity. In light of this dismissal, it is unnecessary to address Defendant Baker's argument concerning

municipal liability.

**E.    Defendant Baker is not entitled to qualified immunity.**

Government officials are entitled to qualified immunity from liability for civil damages under § 1983 when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   The qualified immunity analysis involves two steps: (1) whether the alleged conduct violated a constitutional right, and if so, (2) whether the law was clearly established at the time of the defendant's actions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The Due Process Clause provides that whenever a public employee is terminated, that employee has a right to a hearing to challenge the termination and the opportunity for a post-termination hearing and appeal. *Copelin-Brown v. N.M. State Personnel Office*, 399 F.3d 1248, 1256 (10th Cir. 2005) (citing *Roth*, 408 U.S. at 577 and *Loudermill*, 470 U.S. at 546-47)).   "[T]he law has been established for thirty years; the Due Process Clause requires the state to provide an opportunity for a hearing whenever a permanent state employee is terminated." *Copelin-Brown*, 399 F.3d at 1256.   The law has been clearly established for three decades.

The Supreme Court has held "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818-19.   Thus, the question is whether the alleged conduct violated a constitutional right of Mr. Rios. *Saucier*, 533 U.S. at 201.

On summary judgment, the evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Fuerschbach*, 439 F.3d at 1207. Viewed in the light most favorable to Mr. Rios, the evidence establishes that Mr. Rios was a permanent public employee and that Defendant Baker denied Mr. Rios the right to a pre-termination

15

hearing by threatening Mr. Rios with the loss of benefits if Mr. Rios failed to resign by a date specified by Defendant Baker.   The alleged conduct violated a constitutional right and the law was clearly established at the time of Defendants Baker's actions.   For these reasons, Defendant Baker is not entitled to qualified immunity.

**F.      The §1983 due process claim against Defendant Baker is viable.**

Defendant Baker asserts that Mr. Rios cannot maintain a §1983 claim against him for constructive discharge because City, and not Defendant Baker, discharged Mr. Rios.  Defendant Baker relies on employment cases discussing Title VII, a statute limited to suits against employers. *See Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996).   Constitutional claims arising under §1983 are not so limited.   *See* U.S.C. §1983.  Viewed in the light most favorable to Mr. Rios, the evidence supports a claim that Defendant Baker violated Mr. Rios' due process rights under color of state law.  Mr. Rios has presented sufficient evidence to withstand summary judgment on the §1983 claim against Defendant Baker.

**WHEREFORE,**

**IT IS ORDERED** that the claims against Defendant Baker in his official capacity are dismissed without prejudice.

**IT IS ORDERED** that Defendant Bill Baker's Motion for Summary Judgment (Doc. 7), filed on February 8, 2007, is otherwise **DENIED**.


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**